FILED
Friday, 09 July, 2004  02:56:45 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTRAL LABORERS' PENSION, WELFARE AND ANNUITY FUNDS, et. al, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  04-3060 |
| ROBERT SPATES d/b/a SPATES CONSTRUCTION, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Robert Spates d/b/a Spates Construction's (Spates) Motion to Dismiss (d/e 5) (Spates' Motion for Summary Judgment).  Spates is proceeding pro se in this action.  His motion to dismiss is taken as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b) because the Plaintiffs Central Laborers Pension Welfare and Annuity Funds, et al. (the Funds) presented matters outside the pleadings, notably four exhibits lettered A through D, in response to

1

Spates' Motion to Dismiss.¹  See April 16, 2004, Minute Entry.

The Funds claim that Spates violated a provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001 et seq., which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  The Funds claim that Spates has been delinquent with his contributions, and they seek monies from Spates for the period, February 1, 1997 to December 31, 2002.  Complaint (d/e 1), ¶ 9.  Spates' Motion is based upon his Chapter 7 bankruptcy discharge, which occurred on December 28, 1998.  For the reasons stated below, Spates' Motion for Summary Judgment is ALLOWED in part and DENIED in part.²

---

¹The parties joined as the Funds include: Central Laborers' Pension, Welfare and Annuity Funds, IL Laborers' and Contractors' Training Trust Fund, Central Illinois Builders Industry Advancement Fund, South Central Laborers' of IL Vacation Fund, Central Illinois Laborers and Employers Cooperative and Education Trust, Laborers' Political League, and Central Illinois Midwest Region Foundation For Fair Contracting and Laborers' Locals #152, #159 and #703.

²The Court has considered Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment (d/e 9) (Plaintiffs' Motion) as a response to Defendant's Motion for Summary Judgment.  The Funds do not ask for judgment on any basis, and instead argue that genuine issues of material fact exist on all of their claims.  Id. at 6-8.

STATEMENT OF FACTS

The Funds are maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, and ERISA, 29 U.S.C. § 1001 et seq. The Funds' addresses and places of business are in Jacksonville, Illinois (Morgan County). Defendant is Robert Spates (Spates) who resides and does business in Decatur, Illinois (Macon County).

Spates' relationship with the Funds arose from contacts he made doing business as Spates Construction. Spates Construction employed workers who were members of Laborers' International Union of North America, AFL-CIO (Union), a participant in the Funds. Participation Agreements (Agreements) were executed by the respective unions and Spates, doing business as Spates Construction, obligating Spates Construction to contribute to the Funds.[3] The Agreements were signed by Spates on the following dates:

| Local Union Branch | Execution Date |
|---|---|
| Local 84 | October 20, 1986 |

---

[3] When he executed the Agreements, it appears Spates was operating his construction company as a sole proprietorship. In his bankruptcy petition, Spates listed the Funds as unsecured creditors. Defendant's Reply to Plaintiffs' Response to Motion to Dismiss (d/e 7) (Defendant's Reply), Exh. A.

| Local 159 | May 17, 1989 |
| --- | --- |
| Local 573 | July 19, 1990 |
| Local 573 | July 9, 1992 |

Complaint, ¶ 3, Exh. A.

Spates states that he ceased doing business as Spates Construction in the Fall of 1997. Affidavit of Robert Spates (d/e 8), ¶ 3. On January 6, 1998, Spates incorporated Spates Contracting, Inc. as an Illinois corporation. Response to Motion to Dismiss (d/e 6) (Plaintiffs' Response), Exh. C. Spates became the president and sole shareholder of the newly formed corporation. Plaintiffs' Motion, pg. 4, ¶¶ 7-8. That same year, Spates personally filed for Chapter 7 bankruptcy on September 18, 1998, listing the Funds as unsecured creditors. Defendant's Reply, Exh. A. Spates received a discharge in bankruptcy on December 28, 1998. The Funds' evidence indicates that Spates Contracting, Inc. was involuntarily dissolved by the Illinois Secretary of State on June 1, 2000. Plaintiffs' Motion, Exh. A.

Spates Contracting, Inc. never signed the Agreements; however, it did contribute to the Funds on behalf of its employees. Plaintiffs' Response, Exh. D. It filed six (6) reports, with accompanying contributions to the

4

Funds, between September 1998 and December 1999. Id. Spates executed these reports as the president of Spates Contracting, Inc.

From January 2000 forward, however, Spates at times filed reports and made contributions in the names of both Spates Contracting, Inc. and at other times did so in the name of Spates Construction. Id. For example, on a monthly basis from January 2000 through May 2000, Spates submitted reports in the name of Spates Construction Co. Id. For the month of June 2000, however, Spates submitted reports for both Spates Contracting, Inc. and Spates Construction Co. As president, he executed a report from Spates Construction Co. to Local # 159 and another report from Spates Contracting, Inc. to Local # 703.[4] Id. This joint reporting was repeated for the months February 2001 through May 2001. Id. From January 2000 on, Spates submitted eighteen (18) reports on behalf of Spates Contracting, Inc. and fourteen (14) reports on behalf of Spates Construction Co. to the Funds. Id.

Spates states that he voluntarily contributed to the Funds.

---

[4]Spates claims that he ceased doing business as Spates Construction in the Fall of 1997, and evidence submitted by the Funds indicates that the Illinois Secretary of State dissolved Spates Contracting, Inc. on June 1, 2000. Accordingly, it remains unclear on behalf of what entity Spates was in fact reporting for the month of June 2000.

Defendant's Reply, ¶ 4. The reporting form he used for all the aforementioned reports, however, included the following statement:

> We hereby certify that this report includes all hours worked by employees in our employment within the territorial and occupational jurisdiction of the Central Laborers' Funds for the month shown above and further, that the Employer whose name and entity is set forth below, subscribes to and agrees to be bound by and confirms and adopts all of the provisions and terms of the Agreement and Declarations of Trust establishing the Central Laborers' Welfare Fund . . . and all amendments, revisions, additions and deletions thereto as to both Trust Agreements . . . and further agrees to accept as a personal obligation for himself and on behalf of his firm to oversee the payment of the established rates of contributions to the aforesaid Funds . . .

Plaintiffs' Response, Exh. D.

In 2003, the Funds engaged Romolo and Associates, C.P.A. (Romolo), to examine Spates Contracting, Inc.'s and Spates Construction's payroll records to determine if full payment, as required under the Agreements, had been made. Romolo concluded, for the period February 1, 1997 to December 31, 2002, that Spates' companies under-contributed by $7,440.85. Complaint, ¶¶ 8-9. In addition to other delinquent contributions and liquidated damages of $14,574.36, Romolo reported that

Spates owed Plaintiffs $22,015.20.[5]  Id.

ANALYSIS

At summary judgment, the movant must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Spates' Motion to Dismiss, treated by the Court as a motion for

---

[5]The auditor noted, however, that the information he evaluated contained significant gaps:
> There was absolutely no information provided for the year 2001. The only complete year in which payroll information was provided was 1997 and, as stated above, I was not able to tie-out any of this data. For 1998, partial payroll information was provided, but, again, I could not tie-out any of this information. For part of 1998, all of 1999, 2000, and 2002, the hours worked was [sic] taken from the partial check register directly, or was [sic] estimated from a net wage amount from a written check. Even the check register is partial, as I do not have a contiguous check number sequence.

Complaint, Exh. F, pg. 3.

7

summary judgment pursuant to Fed. R. Civ. P. 12(b), argues that his personal bankruptcy proceedings discharged his debts as Spates Construction, including the delinquent payments claimed by the Funds. In addition, Spates claims that since he did not sign participation agreements on behalf of Spates Contracting, Inc., he is not obligated to contribute to the Funds for work done by union members for Spates Contracting, Inc.

I.  PRE-BANKRUPTCY LIABILITY OF SPATES FOR SPATES CONSTRUCTION CONTRIBUTIONS

The Funds claim Spates personally owes them delinquent contributions for the period February 1, 1997 through December 31, 2002. Complaint, ¶ 9.  Yet Spates ceased doing business as Spates Construction in the Fall of 1997, filed for personal bankruptcy on September 18, 1998, and named the Funds as unsecured creditors in his personal bankruptcy. Any liabilities to the Funds that Spates incurred while doing business as Spates Construction, before its closure in Fall of 1997, were discharged in bankruptcy on December 28, 1998.  11 U.S.C. § 524.  Accordingly, there is no genuine issue of material fact as to whether Spates is liable for any delinquent contributions from February 1, 1997, through the point when

he ceased doing business as Spates Construction in the Fall of 1997.

II. SPATES' LIABILITY FOR CONTRIBUTIONS DURING EXISTENCE OF SPATES CONTRACTING, INC.

On January 6, 1998, Spates Contracting, Inc. was incorporated and began doing business. Spates moves for summary judgment on the Funds' claims for contributions from Spates Contracting, Inc. based on his assertion that Spates Contracting, Inc. never entered into participation agreements with the Funds. In response, the Funds claim that there is a genuine issue of material fact as to whether Spates Contracting, Inc., by its conduct, assumed the Agreements in place with Spates Construction.

Employers may "adopt a collective bargaining agreement by a course of conduct." Robbins v. Lynch, 836 F.2d 330, 332 (7th Cir. 1988); see also Capitol-Husting Co., Inc. v. NLRB, 671 F.2d 237, 243 (7th Cir. 1982). In Robbins, the employer "paid the union scale, turned over dues under a checkoff system, negotiated grievances, and paid (some) pension and welfare contributions." Id.

In the present action, Spates executed reports and made contributions to the Funds as the president of Spates Contracting, Inc. on six different

9

occasions between September 1998 and December 1999.[6] Plaintiffs' Response, Exh. D. This conduct is sufficient to give rise to a genuine issue of material fact as to whether Spates Contracting, Inc. assumed the Agreements in place between Spates doing business as Spates Construction and the Funds. Compare Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 374-376 (7th Cir. 1985) (holding that signing reports and contributing to funds for a year and a half indicated acceptance of the agreement), with Sullivan v. Cirone, 1995 WL 33163, *3-4 (N.D. Ill., Jan. 25, 1995) (holding that two reports but no contributions to pension funds did not indicate employer's acceptance of the agreement).

Assuming, arguendo, that Spates Contracting, Inc. is liable to the Fund for contributions, then issues of fact also exist as to whether Spates is personally liable for Spates Contracting, Inc.'s obligations. Normally, Spates as a corporate officer and shareholder of Spates Contracting, Inc. would not be personally liable for contributions arising out of that adoption unless state corporate law allowed it. See Plumbers' Pension Fund, Local 130 v. Niedrich, 891 F.2d 1297, 1302 (7th Cir. 1989) ("Corporate officers

---

[6] Spates also executed monthly reports to the Funds from January 2000 to May 2000 as the president of Spates Construction Co. Plaintiffs' Response, Exh. D.

who are not parties to a pension plan or a collective bargaining agreement requiring contributions to a pension plan are personally liable for pension contributions only to the extent they are liable for general corporate debts under state corporate law."). Under Illinois state corporate law, however:

> A shareholder may not treat corporate assets as his own prior to completion of the winding up process, and a corporate officer cannot serve himself first by manipulating corporate affairs to the detriment of creditors. In any transaction in which an officer acquires corporate property, the burden of proof lies with him to establish that the transaction was fair. Further, a majority stockholder who, after dissolution, converts corporate property and assets to his own use, becomes an equitable trustee of that property for the benefit of corporate creditors.

Mid-American Elevator Co., Inc. v. Norcon, Inc., 287 Ill.App.3d 582, 589-90, 679 N.E.2d 387, 392 (Ill.App. 1 Dist. 1996) (internal citations omitted). In the event of a corporate dissolution, these rules remain in effect. Upon dissolution, a "corporation must adhere to all corporate formalities during the winding up process; shareholders are entitled to the residue of corporate funds only after providing for the rights of corporate creditors and the legal claims of third persons." Id., 287 Ill.App.3d at 589, 679 N.E.2d at 391.

The Funds have supplied evidence that Spates continued to operate as Spates Contracting, Inc. after its June 1, 2000, involuntary dissolution.

11

There remains a genuine issue of material fact as to whether Spates acquired corporate property from Spates Contracting, Inc. after its dissolution, and thereby became an equitable trustee of all creditors of Spates Contracting, Inc. The list of potential creditors of Spates Contracting, Inc. includes the Funds because the Court has found that there is a genuine issue of material fact as to whether Spates Contracting, Inc. adopted the Agreements by its conduct. Therefore, Spates is not entitled to summary judgment as to the claims for delinquent contributions made by the Funds from the advent of Spates Contracting, Inc. on January 6, 1998, through its involuntary dissolution by the Illinois Secretary of State on June 1, 2000, based on the argument that Spates Contracting, Inc. did not sign the Participation Agreements.

III.   SPATES' LIABILITY FOLLOWING DISSOLUTION OF SPATES CONTRACTING, INC. UNDER THE ILLINOIS BUSINESS CORPORATION ACT OF 1983

Spates argues that he should not be held personally liable for contributions arising from the Agreements between the Funds and Spates Construction. As stated, supra, however, there is a genuine issue of material fact as to whether Spates Contracting, Inc. adopted the Agreements through its course of conduct, and Spates may have acquired

personal liability on Spates Contracting, Inc.'s behalf by acquiring the corporation's assets after the dissolution. By the same token, there remains a genuine issue of material fact as to whether Spates is personally liable for contributions to the Funds both before and after the June 1, 2000, involuntary dissolution of Spates Contracting, Inc.

The Funds have presented evidence that the Illinois Secretary of State involuntarily dissolved Spates Contracting, Inc. on June 1, 2000. <u>Plaintiffs' Motion</u>, Exh. A. Further, the Funds have also presented evidence that Spates executed reports and made contributions as president of both Spates Contracting, Inc. and Spates Construction, after the June 1, 2000, involuntary dissolution of Spates Contracting, Inc. For example, for the month of June 2000 Spates submitted reports for both Spates Contracting, Inc. and Spates Construction Co. As president, Spates executed a report from Spates Construction Co. to Local # 159, and another report from Spates Contracting, Inc. to Local # 703. <u>Plaintiffs' Response</u>, Exh. D. This joint reporting was repeated for the months February 2001 through May 2001. <u>Id.</u> From June 2000 through July 2002, Spates submitted eighteen (18) reports and made nine (9) contributions on behalf of Spates Contracting, Inc. as well as submitting eight (8) reports and making six (6)

contributions on behalf of Spates Construction Co. to the Funds.  Id.

Under 805 ILCS 5/3.20, "[a]ll persons who assume to exercise corporate powers without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." The Illinois courts have interpreted this rule to personally bind those who enter into contracts on behalf of a dissolved corporation when they knew or should have known the corporation's legal status.  H & H Press, Inc. v. Axelrod, 265 Ill.App.3d 670, 680, 638 N.E.2d 333, 340 (Ill.App. 1 Dist. Jul 15, 1994) ("An officer of a corporation dissolved for nonpayment of franchise taxes, who enters into contracts on behalf of the corporation after dissolution, may be held personally liable under those contracts if she knew or, because of her position, should have known of the dissolution.").

Assuming, arguendo, that Spates Contracting, Inc. adopted the Agreements by its conduct, then Spates may have personally adopted the Agreements through his conduct after the June 1, 2000, dissolution of Spates Contracting, Inc.  See Robbins, 836 F.2d at 332; Gariup, 777 F.2d at 374-376; Sullivan, 1995 WL 33163, *3-4.  As its president and sole shareholder, Spates would have more reason to know of Spates Contracting, Inc.'s dissolution than any other individual.  There remains

a genuine issue of fact, however, as to whether Spates received notice of the dissolution. See H & H Press, 265 Ill.App.3d at 680, 638 N.E.2d at 340 (finding vice-president of dissolved corporation not liable in part due to the lack of evidence that she was sent notice of the dissolution). Therefore, Spates is not entitled to summary judgment as to the contributions claimed by the Funds after the June 1, 2000 involuntary dissolution of Spates Contracting, Inc. because genuine issues of material fact remain.

IV. SPATES' LIABILITY AS A FIDUCIARY UNDER ERISA

In Plaintiffs' Motion, the Funds note that "[a]lthough Plaintiffs have not plead a count for breach of a fiduciary duty, Plaintiffs intend to seek leave to amend the Complaint to add this cause of action." Plaintiffs' Motion, pg. 8. Neither the Funds nor Spates claim that they are entitled to summary judgment based on this issue. Accordingly, this claim has not been filed; it is not presently before the Court, and the Court does not address it.

## CONCLUSION

THEREFORE, for the reasons stated above, Defendant Spates' Motion to Dismiss (d/e 5), taken as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b), is ALLOWED in part and DENIED in

part. Any debts to the Funds for contributions Spates incurred while doing business as Spates Construction, from February 1, 1997, until Spates ceased doing business as Spates Construction in Fall of 1997, were discharged in bankruptcy on December 28, 1998. Accordingly, the Funds' claims for contributions for this period are dismissed. There remains a genuine issue of material fact, however, as to whether Spates Contracting, Inc. adopted, by its conduct, the Agreements in place between the Funds and Spates Construction and became liable to the Funds for contributions. There is additionally a genuine issue of material fact as to whether Spates took the assets of Spates Contracting, Inc. after its dissolution and became personally bound to pay the obligations of Spates Contracting, Inc. Finally, there is a genuine issue of material fact as to whether Spates is personally liable for contributions owed for the period after the June 1, 2000, involuntary dissolution of Spates Contracting, Inc.

IT IS THEREFORE SO ORDERED.

ENTER:   July 9, 2004.

        FOR THE COURT:

                                            s/ Jeanne E. Scott
                                            JEANNE E. SCOTT
                                UNITED STATES DISTRICT JUDGE